Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a veteran and former civilian employee of the Department of the Army, seeks to recover the pay of his civilian position during the period he was in prison as a result of convictions by courts-martial in Japan. He alleges that his removal was unlawful in that it was a violation of pertinent civil service statutes and regulations, a violation of his rights under section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 390, as amended 61 Stat. 723, and was based on unconstitutional and completely invalid courts-martial.
At the outset it is noted that there can be no question as to the invalidity of plaintiff’s convictions, since the Supreme Court in the case of McElroy v. Guagliardo, 361 U.S. 281, specifically held that such an action was in violation of the Constitution and invalid.
The sequence of events leading to plaintiff’s dismissal are as follows: On May 21, 1953, plaintiff purchased a 1953 Cadillac automobile from an individual in New York City, to be delivered to plaintiff in Japan. Sometime thereafter, pursuant to an undated contract, plaintiff agreed to sell the automobile to a Japanese National, for the sum of 3,790,000 yen ($10,500). On July 1, 1953, plaintiff appeared before the U.S. Vice Consul in Tokyo, and executed a bill of sale, which purported to transfer the Cadillac automobile to the Japanese National, in consideration of $5,500, receipt of which was acknowledged in the same instrument. On July 2, 1953, plaintiff, in connection with effecting delivery of the automobile, which was then at the port in Yokohama, *210 executed FEC Form B80, entitled “Customs Free Import or Export of Cargo or Customs Declaration of Personal Property,” which, document was, in turn, signed by the certifying officer and the authenticating officer. Plaintiff therein certified that the Cadillac 4-door sedan, Model Fleetwood 60S, “is imported by me for the personal use of myself (or my dependents) and that such property will not be disposed of to persons or agencies not accorded the benefits of the Administrative Agreement except as authorized by regulations.”
On December 11, 1953, plaintiff was tried by a special court-martial convened by the Commanding Officer, Camp Tokyo, Honshu, Japan. He was charged with having violated Article 101 of the Uniform Code of Military Justice, in that on July 2,1953, he falsely signed an official document with intent to deceive (FEC Form 380). He was also charged with having violated Article 92 of the Uniform Code of Military Justice in that (1) he failed to register his privately owned vehicle with the Provost Marshal, as required by regulations, and (2) that he transferred his privately owned vehicle to a Japanese National in violation of the regulations. Although plaintiff entered a plea of “not guilty” to all of the charges and specifications, he was found guilty as charged and sentenced to be confined at hard labor for six months and to pay a fine of $2,000. The sentence was approved by the convening authority and found to be legally sufficient in the Office of the Command Staff Judge Advocate.
Plaintiff, on March 2,1954, was notified of proposed action that he be suspended from pay and duty status for 30 days beginning on or about March 4, 1954, pending removal action. Simultaneously plaintiff was notified in writing of his right to answer the advance notice in writing and his right to submit evidence within 24 hours from the date of the notice of proposed suspension.
On March 2, 1954, he was notified by another letter of the removal action and also at the same time notified of his right to answer in writing and his right to submit evidence within 10 days of said date. In response to those notifications, plaintiff under date of March 3, 1954, requested by letter to the Civilian Personnel Section, Headquarters, Second Command APO 500, among other things, that he be allowed *211 to appear before a civil service grievance committee in accordance with, the Veterans’ Preference Act of 1944, supra.
On March 4,1954, plaintiff was notified in writing by the Department of the Army that he was suspended effective March 6, 1954, for 30 days pending removal for violation of Articles 107 and 92 of the Uniform Code of Military Justice, 10 U.S.C. 801.
On March 16,1954, plaintiff was advised of adverse action on his request for the grievance committee hearing. At the same time, he was advised that his removal would be effective on or after 30 days from March 2, 1954, and that he had the right to appeal to the Civil Service Commission under section 14 of the Veterans’ Preference Act, supra, within 10 days after the effective date of removal.
Apparently plaintiff was not permanently removed at the expiration of 30 days from March 2, 1954, because in June and July of 1954 plaintiff was tried by an Army general court-martial and found guilty of various violations of Articles 81 and 92 of the Uniform Code of Military Justice, which violations involved prohibited money transactions occurring in 1953.
On October 25,1954, plaintiff was notified in writing that effective August 27,1954, he was removed from his position. The notice stated in part as follows:
Removed for violation of the Uniform Code of Military Justice, Article 107 and Article 92. Subject employee imported a 1953 Cadillac four-door sedan for his own personal use and during the same month transferred it to Kichinosuke Nohara, a Japanese National, which transfer is in violation of current regulations. In final notice of proposed adverse action, removal, employee was given notice of the right to appeal to the Civil Service Commission under Section 14 of the Veterans’ Preference Act.
No appeal was taken to the Civil Service Commission from this action.
A Board of Review in the Office of the Judge Advocate General of the Army reviewed the action of the general court-martial and made certain modifications in the findings but approved plaintiff’s guilt as to other specifications relating to dollar manipulations. He was sentenced to three years’ *212 imprisonment and given a fine in the amount of $25,000, which carried with it an order of confinement until said $25,-000 was paid. As a consequence of the courts-martial plaintiff was confined in Army prisons from December 10,1953 to March 13,1957. It is for this period of time plaintiff seeks recovery.
Defendant contends plaintiff cannot recover because (1) he has failed to exhaust his administrative remedy by not appealing to the Civil Service Commission; (2) because his removal was procedurally proper; and (3) because he is guilty of laches.
In our judgment plaintiff is not barred in this action for failure to appeal to the Civil Service Commission. In the first place, plaintiff was notified of the right to appeal within 10 days of the effective date of his removal. However, the effective date of his removal was August 27,1954, but plaintiff was not informed of the action until October 25, 1954, which was, of course, more than 10 days after the effective date. This is not to say that the Civil Service Commission would not have entertained an appeal, but plaintiff at that time was in jail in Japan. He was not a lawyer, he had no access to any legal talent of any sort, and we do not think plaintiff should be penalized for accepting what the Army told him; i.e., that he had 10 days to appeal from the effective date of his removal. This, it seems to us, to be perfectly normal for a person of plaintiff’s level, especially when he is subjected to the strain of confinement in a strange land and under the stress of the circumstances and sentence by the general court-martial. Therefore, it appears that this is one of the unusual circumstances alluded to by this court in Adler, et al. v. United States, 134 Ct. Cl. 200, 203, 146 F. Supp. 956, cert. denied, 352 U.S. 894, wherein the court stated:
* * * we think that an employee must appeal to the Civil Service Commission * * * before resorting to the courts, except in v/nusual circumstances, [emphasis supplied]
Since we believe in the circumstances of this case that plaintiff has the right to come to this court without an appeal to the Civil Service Commission, we must now concern *213 ourselves with, the question of whether or not any procedural error is present in plaintiff’s removal.
Section 14 of the Veterans’ Preference Act of 1944, supra, provides that a veteran’s preference eligible shall have a right to make a personal appearance in regard to any proposed discharge. Beyond question, plaintiff was not granted this right. Failing in this respect, we think plaintiff’s removal was defective and, under the decisions of this court, plaintiff is entitled to recover back pay lost as a result of the invalid suspension and removal. Blackmar v. United States, 128 Ct. Cl. 693.
Defendant finally says plaintiff is not entitled to recover because he has been guilty of laches. In this respect the record shows that plaintiff was confined in Army prisons until March 13, 1957. This suit was filed in July of 1960, approximately three years later. No doubt some time must have elapsed before plaintiff became completely rehabilitated, and no doubt it took some time to shop for a lawyer and some time was spent by the lawyer in preparation of this petition and investigation incident thereto. No records or testimony have been lost by reason of delay, and we think plaintiff acted as swiftly as a normal person would have under like circumstances.
We are, however, confronted with a serious problem affecting plaintiff’s recovery. He had a 2-year employment agreement effective March 31,1952. Under normal circumstances, an employee could not recover beyond the expiration date of his employment contract. Whether in this case the contract was extended or renewed we do not know. We have not been told, and do not know, whether or not plaintiff had been blanketed into the civil service of the United States, or had the right to work after March 31,1954. Unless the contract was extended or renewed, or plaintiff had some civil service rights of employment, plaintiff’s recovery would be limited to the days he was prevented from working by reason of his unlawful removal, which would amount to approximately three weeks. If the contract was, either before or after the letter of charges against plaintiff, in fact extended and/or renewed, or plaintiff had some sort of rights to employment, *214 plaintiff would be entitled to recover for the 3-year period prayed for.
Thus, at this time, we hold that plaintiff was illegally removed from his position and is entitled to recover the pay lost by reason thereof. However, judgment is suspended at this time and the case is remanded to the Commissioner of this court for further proceedings relative to a determination of the question of plaintiff’s right to employment after expiration of his contract and the amounts which plaintiff may be entitled to recover.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Mastín G. White, and the briefs and argument of counsel, makes findings of fact as follows:

Introductory Statement

The plaintiff, formerly a civilian employee of the Department of the Army in Japan, was charged, tried by Army courts-martial in Japan, convicted, sentenced, and imprisoned from December 10, 1953, until March 13, 1957, because of alleged violations of the Uniform Code of Military Justice. In the present action, the plaintiff, who was first suspended and later removed from his civilian position, asserts a claim for compensation during the period of his imprisonment, computed in accordance with the pay rate applicable to the position from which he was suspended and removed.[1]
1. The plaintiff is a citizen of the United States. He is the sole owner of the claim asserted in this action, and no assigmnent or transfer of the claim or any part of it has been made by him.
2. On March 2, 1952, the plaintiff was employed by the Department of the Army in a civilian position as a clerk, GS-3. His appointment was an “Excepted Appointment” under Civil Service Regulations 6.101 (h), Schedule A, and did not confer a competitive (classified) civil service status *215 on tbe plaintiff. Tbe appointment was subject to the satisfactory completion of a trial period of 1 year.
3. The plaintiff was assigned to General Headquarters, Far East Command, Japan, under a 2-year employment agreement effective upon the date of his arrival in Japan. The plaintiff arrived in Japan on March 31, 1952.
4. At all times pertinent to this litigation, the plaintiff was entitled to veterans’ preference rights.
5. On May 21,1953, the plaintiff purchased a 1953 Cadillac automobile from one Yitali Karant, 2350 Broadway, New York, N.Y., to be delivered to him in Japan.
6. Sometime after May 21, 1953, pursuant to an undated contract, the plaintiff agreed to sell the automobile mentioned in finding 5 to one Kichinosuke Nohara, a Japanese National, for the sum of 3,790,000 yen ($10,500).
7. On July 1,1953, the plaintiff appeared before the United States Vice Consul in Tokyo, Japan, and executed a bill of sale, which purported to transfer the automobile mentioned in findings 5 and 6 to Kichinosuke Nohara in consideration of $5,500, receipt of which was acknowledged in the same instrument.
8. On July 2, 1953, the plaintiff, in connection with effecting delivery of the automobile mentioned in findings 5-7, which was then at the port in Yokohama, Japan, executed FEC Form 380, entitled “Customs Free Import or Export of Cargo or Customs Declaration of Personal Property.” The document was, in turn, signed by the certifying officer and the authenticating officer. The following certificate appeared above the signature of the plaintiff:
1. The undersigned certifies that he is a member of the United States Forces or an employee of a Contractor, as defined in Cir. 8, Hq., FEC, 1952, and that the above listed property [1953 Cadillac 4 dr sedan, Model Fleetwood 60S] is imported by me for the personal use of myself (or my dependents) and that such property will not be disposed of to persons or agencies not accorded the benefits of the Administrative Agreement except as authorized by regulations.
2. I further certify that my personal property and personal effects contain no items or commodities prohibited by paragraph 11a, Cir. 8, Hq., FEC, 1952.
*216 9. (a) On December 11,1953, the plaintiff was tried by a special court-martial convened by the Commanding Officer, Camp Tokyo, Honshu, J apan. He was charged with having violated Article 107 of the Uniform Code of Military Justice, in that he did, on or about July 2, 1953, with intent to deceive, falsely sign an official document (FEC Form 380). He was also charged with having violated Article 92 of the Uniform Code of Military Justice, in that (1) during the month of June 1953, he failed to register his privately owned vehicle with the Provost Marshal, Japan, as required by Paragraph 8 of Letter, Headquarters Far East Command, APO 500, AG 451 (7 June 1952) PM, subject: Inspection and Registration of Privately Owned Vehicles of Members of the United States Armed Forces, J apan, dated 7 June 1952; and (2) on or about 12 July 1953, he transferred his privately owned vehicle to a Japanese National in violation of paragraph 5a, Letter, Headquarters Far East Command, APO 500, AG 400.703 (22 January 1953) EJ/C, subject: Disposition of Personal Property in Japan, dated 22 January 1953.
(b) The plaintiff entered a plea of “not guilty” to all of the charges and specifications referred to in paragraph (a) of this finding.
(c) The plaintiff was found guilty as charged and was sentenced to be confined at hard labor for 6 months and to pay a fine of $2,000.
(d) The sentence was approved by the convening authority on December 28, 1953.
(e) On January 18,1954, the record of trial was examined in the Office of the Command Staff Judge Advocate and was found to be legally sufficient.
10. Under the date of March 2, 1954, the Civilian Personnel Officer at Headquarters, Central Command, APO 500, Japan, sent to the plaintiff a letter stating in part as follows:
This is to advise you that it is proposed to suspend you from pay and duty status for a period of thirty (30) calendar days beginning on or about 4 March 1954, pending action to remove you from federal employment for violation of the Uniform Code of Military Justice Article 107 and Article 92.

*217 You have the right to answer this advance notice with respect to proposed suspension in writing, and to submit any and all evidence you may desire within 24 hours from the date of receipt of this notice. * * *
11. Under the date of March 2, 1954, the Civilian Personnel Office at Headquarters, Central Command, APO 500, Japan, sent to the plaintiff another letter stating in part as follows:
In accordance with section 14 of the Veteran’s Preference Act of 1944, this is a notice of proposed adverse action to remove you from employment for violation of the Uniform Code of Military Justice Article 107 and Article 92 on or after 30 days following your receipt of this notice.
* * $ ❖ *
You have the right to answer this notice of proposed action in writing and to submit any and all evidence you may desire within ten (10) days from the date of receipt of this notice. * * *
12. In reply to ¡the letters referred to in findings 10 and 11, the plaintiff under the date of March 3, 1954, addressed a letter to the Civilian Personnel Section, Headquarters, Central Command, APO 500. The plaintiff (among other things) asked that he be allowed “to appear before a Civil Service Grievance committee, in accordance with the Veterans Preference Act of 1944.”
13. On March 4,1954, the plaintiff was notified in writing by the appropriate official of the Department of the Army that, effective March 6,1954, he was suspended from his position as clerk for 30 days “pending removal for violation of the Uniform Code of Military Justice Article 107 and Article 92.”
14. The plaintiff’s letter of March 3,1954 (see finding 12) was acknowledged by the Civilian Personnel Officer at Headquarters, Central Command, APO 500, on March 16, 1954. In his communication of that date, the Civilian Personnel Officer stated in part as follows:
You are advised that your request for a grievance committee hearing * * * cannot be favorably considered inasmuch as this is not a matter that can be resolved by the Grievance Committee. Your conviction *218 and sentence by the Special Court Martial which tried you has been reviewed, as required by law by the Staff Judge Advocate Section, Central Command and has been held to be legally sufficient and free from prejudicial error. Under Article 64c, Uniform Code of Military Justice, this review is a final and conclusive adjudication.
Therefore, after careful consideration of the charges and your reply, decision has been reached to effect your removal for violation of the Uniform Code of Military Justice Article 107 and Article 92 effective on or after thirty (30) days from 2 March 1954, as proposed in letter of advance notice of that date.
You have the right to appeal to the Civil Service Commission under Section 14 of the Veteran’s Preference Act within ten (10) days after the effective date of removal. * * *
15. The plaintiff was tried by an Army general court-martial convened at Tokyo, Japan, in June and July of 1954. He was found guilty of various violations of Articles 81 and 92 of the Uniform Code of Military Justice committed during the year 1953, involving prohibited money transactions. Sentence was adjudged on July 8,1954. The record of trial was forwarded to The Judge Advocate General of the Army for review by a board of review.
16. On October 25, 1954, the plaintiff was notified in writing by the appropriate official of the Department of the Army that, effective August 27, 1954, he was removed from his position as clerk. The notice stated in part as follows:
Removed for violation of the Uniform Code of Military Justice, Article 107 and Article 92. Subject employee imported a 1953 Cadillac four-door sedan for his own personal use and during the same month transferred it to Kichinosuke Nohara, a Japanese National, which transfer is in violation of current regulations. In final notice of proposed adverse action, removal, employee was given notice of the right to appeal to the Civil Service Commission under Section 14 of the Veteran’s Preference Act.
17. At the time of his removal, as indicated in finding 16, the plaintiff was employed as a clerk, GS-301-5b, and was receiving pay at the rate of $3,535 per annum.
18. The plaintiff did not take an appeal to the Civil Service *219 Commission from tbe action of tbe Department of tbe Army in removing bim from bis employment witb that Department.
,19. (a) A board of review in the Office of The Judge Advocate General of tbe Army reviewed tbe action of tbe general court-martial referred to in finding 15. In a decision dated January 10, 1955, tbe board set aside and dismissed the" findings of guilty as to two specifications, and approved and affirmed tbe plaintiff’s guilt as to specifications charging:
(1) Wrongful and unlawful purchases by tbe accused of dollar instruments valued at $38,025, a sum in excess of his pay and allowances for tbe period involved (violation of Article 92, Uniform Code of Military Justice).
(2) Wrongful and unlawful purchases by the accused, in tbe name of a third person, of two mail transfers in tbe total amount of $4,000 with funds which were owned by and belonged to the accused (violations of Article 92, Uniform Code of Military Justice).
(3) A conspiracy between the accused and a named enlisted man to violate the clause of the regulation which prohibited the purchase and remission of money, for third parties, through a military financial facility (violation of Article 81, Uniform Code of Military Justice).
(b) The sentence, as modified and approved by the board of review, provided for payment to the United States of a fine of $25,000, confinement at hard labor for 3 years, and further confinement at hard labor until the fine was paid, but for not more than an additional period of 3 years.
20. The United States Court of Military Appeals, in an opinion dated June 8,1956, affirmed the decision of the board of review mentioned in finding 19.
21. As a consequence of the court-martial proceedings referred to in previous findings, the plaintiff was confined in Army prisons from December 10,1953, to March 13,1957.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover the pay lost by reason of being illegally removed from his position. However, the judgment is suspended and the case remanded to the Trial *220 Commissioner for further proceedings relative to a determination of the question of plaintiff’s right to employment after expiration of his contract.
Pursuant to the order of reference and the court’s opinion of April 5, 1963, Trial Commissioner Mastín Gr. White filed a supplemental report on November 6, 1963, finding that plaintiff’s employment contract obligated him to wort at least 2 years and did not limit his right to continue in the employ of the Army at the expiration, on March 31, 1954, of the 2-year mandatory service period. Accordingly, the Trial Commissioner found that plaintiff was entitled to be paid his salary from March 6, 1954, when his pay was suspended, to March 13, 1957, when he was released from prison. Commissioner White’s report follows:
The plaintiff, formerly a civilian employee of the Department of the Army in Japan, was charged, tried by courts-martial, convicted, sentenced, and imprisoned from December 10,1953, until March 13,1957, because of alleged violations of the Uniform Code of Military Justice. In the present action, the plaintiff, who was first suspended and later removed from his civilian position, asserts a claim for compensation during the period of his imprisonment, computed in accordance, with the pay rate applicable to the position from which he was suspended and removed.
After a trial, the submission of a report by the commissioner, and consideration of the case by the court, the court rendered an opinion on April 5, 1963, stating in part as follows:
* * * |^r]6 bold that plaintiff was illegally removed from his position and is entitled to recover the pay lost by reason thereof. However, judgment is suspended at this time and the case is remanded to the Commissioner of this court for further proceedings relative to a determination of the question of plaintiff’s right to employment after expiration of his contract and the amounts which plaintiff may be entitled to recover.
Thereafter, a further trial session was held on August 12, 1963; the plaintiff on September 25, 1963, filed a request for *221 additional findings of fact; and on October 24, 1963, tlie defendant filed a document stating as follows:
Defendant agrees with, and accepts, Plaintiff’s Proposed Findings of Fact, filed September 25,1963, except for the apparent typographical error appearing in the footnote on page 3 of plaintiff’s findings. It is clear that the date March 6, 1953, mentioned in the footnote should correctly be stated as March 6,195)±.
On the basis of the proceedings previously mentioned, the undersigned has adopted the plaintiff’s requested findings verbatim as supplemental findings of fact, except for the final phrase in the plaintiff’s last requested finding, relative to the dates that should be used in computing the amount of the judgment. Those dates were given by the plaintiff as “from December 10,1953 to March 13,1957,” but the plaintiff added a footnote stating as follows:
Plaintiff may have been paid for a portion of this period, i.e., December 10, 1953 to March 6, 195 [4]. Of course, he is not entitled to be paid for periods for which he had already been paid.
The findings of fact previously adopted by the court show that although the plaintiff was confined in Army prisons from and after December 10, 1953, he was not suspended from his civilian position until March 6,1954. In the absence of evidence to the contrary, an inference is warranted that the plaintiff received his pay until he was suspended from his civilian position. This inference is supported by the well-established presumption of administrative regularity. United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926).
Therefore, on the basis of the additional facts agreed to by the parties, it appears that the plaintiff is entitled to a judgment awarding him a sum equivalent to the pay of his civilian position from March 6, 1954, until March 13, 1957. As his annual salary at the time of his suspension and removal was $3,535, it appears that the amount of the judgment should be $10,672.76.
*222 22. When the plaintiff was employed by the Army, he signed an agreement entitled “Conditions op Employment and Tkanspoetation Agreement.” One of the provisions of this agreement was the following:
Unless involuntarily separated at an earlier date, yon are required to remain in service with the command at least 24 months from time of arrival at permanent duty station in order to be authorized return transportation to your place of residence at Government expense. If, at any time during the minimum period of service, you return to the United States for reasons not acceptable to your commanding officer, you will be required to pay the cost of your return travel. If such return is within the first year of service, you will be required to reimburse the Government for the entire cost of your transportation to the oversea command. Should you be separated at any time prior to the completion of the minimum period of service for reasons acceptable to your commanding officer not involving misconduct, your return will be authorized at Government expense.
23. The “2-year employment agreement” referred to in finding of fact No. 3 and referred to in the court’s opinion was the 2-year minimum period in the above-quoted provision of the contract.
24. The 2-year period was a minimum period during which the plaintiff was required to serve. It was not a limitation on the length of his employment. There was m> specific limit — no basic or minimum period — on the plaintiff’s right to continue employment with the Army in Japan. The plaintiff had the right to remain in the employ of the Army after March 31, 1954. He had the right to employment unless or until his employment was validly and properly terminated, which event never occurred.
25. The plaintiff is entitled to pay for the period of his suspension and removal, from March 6, 1954, to March 13, 1957.
On April 17,1964, on motion of the plaintiff that the commissioner’s report be adopted and judgment entered in accordance therewith in the amount of $10,672.76, to which motion defendant indicated no objection, the court issued an order adopting the supplemental report and findings and entered judgment for plaintiff for $10,672.76.

 Although the plaintiff’s imprisonment began on December 10, 1953, the evidence indicates that he was not suspended from his civilian position until March 6, 1954.